# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### APRIL SESSION, 1998

FILED

August 18, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9705-CC-00188 |
| | ) | |
| Appellee, | ) | |
| | ) | MONTGOMERY COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. ROBERT W. WEDEMEYER, |
| GREGORY KEITH WEAVER, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (DUI; RECKLESS DRIVING) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**PETER M. OLSON**                      **JOHN KNOX WALKUP**
OLSON & OLSON, PLC                   Attorney General & Reporter
114 Franklin Street
Clarksville, TN  37040                **KAREN M. YACUZZO**
                                     Assistant Attorney General
                                     2nd Floor, Cordell Hull Building
                                     425 Fifth Avenue North
                                     Nashville, TN  37243

                                     **JOHN WESLEY CARNEY, JR.**
                                     District Attorney General

                                     **LANCE BAKER**
                                     Assistant District Attorney General
                                     204 Franklin Street, Suite 200
                                     Clarksville, TN  37040

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Gregory Keith Weaver, appeals as of right from his convictions of DUI, fourth offense, reckless driving, driving on a revoked license, second offense, violating the open container law, and violating the implied consent law following a jury trial in the Montgomery County Criminal Court. In this appeal, Defendant argues that the trial court erred in denying his Motion to Suppress all evidence obtained as a result of the investigatory stop of him immediately preceding his arrest for DUI and the other related offenses. We affirm the judgment of the trial court.

On October 3, 1995, the Clarksville police dispatcher notified patrol officers that the police department had received a report of a reckless driver who was possibly drunk. According to the report, the suspect vehicle was a red Ford Ranger being driven by a white male with dark hair and a bad complexion. The report further indicated that the Ranger had left the area near the Texaco station and was traveling toward Kroger.

Shortly after the dispatcher relayed this information to the Clarksville officers, Officer Joe Papastathis informed Officer Robert Miller that he had seen the suspect vehicle at the reported location which was in Officer Miller's patrol area. Officer Miller then saw the vehicle and began to follow it in an attempt to corroborate the report. Officer Miller observed Defendant make a "slightly wider turn than what most cars would take if you turned." At this point Defendant pulled into the driveway to his home and stopped. Officer Miller pulled into Defendant's driveway and parked the

patrol car directly behind Defendant's vehicle. At the time, Officer Miller was unaware that the driveway belonged to Defendant.

At some point after Officer Miller pulled into the driveway, but before he confronted Defendant, Officer Robert Smith radioed Officer Miller and told him that the suspect's vehicle had nearly hit his car when he was driving to work just a few minutes earlier. Thereafter, Officer Miller approached Defendant's truck, where he smelled alcohol and saw an open bottle of whiskey in the car. Officer Miller asked Defendant if he had been drinking, and Defendant admitted that he had, and that he had "probably had too much."

Prior to trial, Defendant filed a motion to suppress the evidence garnered from the encounter with Officer Miller. The proper standard of review for suppression issues was set forth by our supreme court in State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996):

> The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

Defendant argues in this appeal that Officer Miller lacked the reasonable suspicion necessary to detain and question him. More specifically, he contends that Officer Miller's observations did not provide sufficient corroboration of the information supplied by the anonymous call placed to the dispatcher, as is required by State v. Pully, 863 S.W.2d 29 (Tenn. 1993).

We first note that we find Officer Miller's actions to be an "investigatory stop" according to constitutional standards. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the Fourth and Fourteenth amendments of the United States Constitution], even though the purpose of the stop is limited and the resulting detention quite brief." Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1396, 59 L. Ed. 2d 660 (1979) (citations omitted). In some circumstances, an officer may briefly detain a suspect without probable cause in order to investigate possible criminal activity. Brown v. Texas, 443 U.S. 47, 51, 99 S. Ct. 2637, 2641, 61 L. Ed. 2d 357 (1979). A person is seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877, 64 L. Ed. 2d 497 (1980). When Officer Miller pulled into the driveway, and then approached Defendant's parked car, a reasonable person would have believed he was no longer free to leave.

This type of investigatory stop is constitutionally permissible only when a police officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In order to determine the specific and articulable facts, this Court must consider the "totality of the circumstances." State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992) (citation omitted). Among the relevant elements to be considered are "objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." Id.

When the information relied upon is provided by an anonymous person, heightened concerns are raised about the reliability of the information because of the possible danger of "false reports, through police fabrication or from vindictive or unreliable informants." Pully, 863 S.W.2d at 31. As a result, our courts have developed a methodology for evaluating the reliability of citizen information. For showings of probable cause based on an informant's tip, our supreme court has followed the former federal two-pronged test that requires proof of the informant's basis of knowledge and credibility. See Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989). While this standard is typically used to determine probable cause, courts of this State have held this standard is to be used as a guide in assessing the reliability of an informant's tip supporting an investigative detention. Pully, 863 S.W.2d at 31; State v. Coleman, 791 S.W.2d 504, 505 (Tenn. Crim. App. 1989), perm. to appeal denied (Tenn. 1990). We also note that reasonable suspicion requires a lower level of proof than probable cause, allowing for citizen information that is less reliable than that required for probable cause showings. Pully, 863 S.W.2d at 32 (citing Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990)).

We must determine if there was sufficient corroboration of the information supplied to Officer Miller by the dispatcher to support a reasonable suspicion of illegal activity. The record indicates that the Clarksville police dispatcher received a telephone call from an unknown citizen warning of a potential drunk driver in a red Ford pickup truck in the area of the Texaco station and Kroger. The suspect was described by the caller as a white male with dark hair and a bad complexion. Although the caller's basis of knowledge is unclear from the record, the

circumstances in which the information was given and the language of the caller suggest first-hand, eyewitness knowledge. "When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first-hand, and hence reliable." Pully, 863 S.W.2d at 32. The proximity in time between the anonymous call to the dispatcher and Officer Miller's subsequent information is significant in assessing the reliability of the information. See id. (citations omitted). Officer Miller received corroboration of that information from Officer Papastathis, who radioed that he had just seen the red truck in the area described by the anonymous caller. Thereafter, Officer Miller saw the truck and began to follow it. He then observed Defendant make a "wider turn than most cars would take." As Officer Miller continued following Defendant in an attempt to corroborate the information that had been given to him, Defendant pulled into a driveway. Officer Miller testified at the hearing that "[Q]uite frankly, I thought maybe [Defendant] was doing this just to avoid me being behind him, so that's why the observation period was not that long." It is clear from the facts that Officer Miller was unaware that the driveway Defendant pulled into was actually that of Defendant's. Once Officer Miller pulled his patrol car into Defendant's driveway, this constituted a "stop" according to constitutional standards.

At some point after Officer Miller pulled into Defendant's driveway, he received information from a fellow officer saying that the person driving the red truck had nearly run him off the road on his way to work at the police station just minutes earlier. However, this information came too late, i.e., after the stop, to be considered in determining whether or not the officer's corroboration was sufficient. We therefore disagree with the trial court's finding that this last information should be considered in the analysis.

However, even though the trial court erred in considering the information relayed to Officer Miller from his fellow officer reporting that Defendant had nearly hit him, we are nonetheless able to uphold the trial court's finding that sufficient corroboration existed in this case. We base this finding upon the information provided to Officer Miller by the dispatcher, the subsequent corroboration from Officer Papastathis, Defendant's unusually wide turn, Officer Miller's personal observations, and his reasonable belief that Defendant pulled into the driveway to avoid being pursued by police. Based on all the foregoing, we find that the informant's reliability and his basis for knowledge were sufficiently substantiated in this case to establish the necessary "reasonable and articulable suspicion" required by our state constitution. See Coleman, 791 S.W.2d at 507.

We must also look to the reasonableness of the investigatory detention which turns on the facts and circumstances of each particular case. See Pully, 863 S.W.2d at 34 (citing Mendenhall, 446 U.S. at 561, 100 S. Ct. at 1881, 64 L. Ed. 2d 497 (Powell, J., concurring)). In order to judge the reasonableness of the investigatory detention involved in the case before us, we must weigh "the gravity of the public concern, the degree to which the seizure advances that concern, and the severity of the intrusion into individual privacy." Pully 863 S.W.2d at 30 (citation omitted). The public interest served by the investigatory detention in this case was the prevention of a drunk driving accident. Certainly the gravity of the concern over drunk driving is significant because of its threat to the safety of any citizen on the public roads. Also, the brief detention of Defendant for questioning was a relatively minor intrusion into Defendant's privacy. Thus, we find the detention of Defendant in the case sub judice to be reasonable.

The evidence does not preponderate against the trial court's denial of Defendant's motion to suppress the evidence gained as a result of the encounter with Officer Miller. We accordingly affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge


CONCUR:


_____
GARY R. WADE, Presiding Judge


_____
L. T. LAFFERTY, Special Judge